IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>HERMILO PALMERIN-ZAMUDIO,<br><br>    Defendant.<br>                                         / | No. CR 12-00532 WHA<br><br>**ORDER DENYING DEFENDANT'S<br>MOTION FOR RECONSIDERATION** |

**INTRODUCTION**

In this Section 1326 criminal prosecution, defendant filed a motion to dismiss the indictment, which was denied. For the reasons set forth below, defendant's motion for reconsideration of the order denying the motion to dismiss is also **DENIED**.

**STATEMENT**

By order dated October 30, defendant Hermilo Palmerin-Zamudio's motion to dismiss the indictment by collaterally attacking his earlier removal order was denied. Prior to the issuance of the order, the parties fully briefed defendant's motion, presented oral argument at a hearing, and filed supplemental briefs. The lengthy order then issued. Defendant then filed a motion for leave to file a motion for reconsideration of the October order. Defendant's motion was granted in part and further briefing was requested regarding defendant's argument that his due process rights were violated at his removal proceedings by the failure to inform defendant of his eligibility for pre-conclusion voluntary departure under 8 U.S.C. 1229c(a).

The relevant facts are set forth more completely in the October order (Dkt. No. 20). Defendant, a citizen of Mexico, was served with a notice to appear that charged him with removability based on two prior convictions. The first conviction was for kidnapping in violation of Section 207(a) of the California Penal Code. Defendant pled guilty in 1994, and was sentenced to three years. In 1999, defendant was charged with possession of a controlled substance under California Health and Safety Code Section 11377(a). The charging document alleged that defendant had possessed "a controlled substance, to wit, methamphetamine" (Kang Decl. Exh. B). Defendant pled guilty and was sentenced to 100 days in custody.

Following his release from custody for the second conviction, defendant was transferred to the custody of the INS. Defendant's removal hearing before the immigration judge was held on November 1, 2000, at which defendant was represented by counsel. The immigration judge ordered that defendant be deported to Mexico, finding that no relief from deportation was available. Defendant now argues that he was denied due process because neither the immigration judge nor his attorney notified him that he was eligible for discretionary relief.

The October order herein held that, due to his prior convictions, defendant was not eligible for relief under former INA Section 212(c), voluntary departure under former INA Section 244(e) (codified at 8 U.S.C. 1254(e)), cancellation of removal under 8 U.S.C. 1229b, or voluntary departure under 8 U.S.C. 1229c(b)(1). In his motion to reconsider the October order, defendant contends that he was eligible for relief under 8 U.S.C. 1229c(a), which provided for voluntary departure prior to the conclusion of removal proceedings.

**ANALYSIS**

To succeed on his collateral challenge to his prior deportation order, defendant must demonstrate that: "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998), *overruled on other grounds by United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2002) (en banc).

Defendant cites to no controlling authority that addresses the availability of voluntary departure relief for aliens such as defendant. Defendant was convicted of two crimes for which he

was deportable: the 1994 kidnapping conviction and the 1999 conviction for possession of a controlled substance. As held in the October order (and as admitted by defendant), the kidnapping conviction was categorically a crime of violence. At the time defendant pled guilty in 1994, a crime of violence constituted an "aggravated felony" for immigration purposes only if the conviction resulted in a term of imprisonment of at least five years. 8 U.S.C. 1101(a)(43)(F). In 1996 and 1997, the Antiterrorism and Effective Death Penalty Act and Illegal Immigration Reform and Immigrant Responsibility Act went into effect, as part of a "sweeping program of immigration reform." IIRIRA amended the definition of an aggravated felony to include "a crime of violence . . . for which the term of imprisonment is at least one year." 8 U.S.C.A. 1011(a)(43)(F); IIRIRA § 321(a)(3). Thus, at the time of his removal proceedings, his 1994 kidnapping conviction qualified as an "aggravated felony." Our court of appeals has clearly stated that "it is settled law that the effective-date provision of the *definitional* statute, IIRIRA § 321, which defines certain crimes as aggravated felonies, applies *regardless* of the date of the commission of the crime. On that *definitional* issue, our law is clear." *Lopez-Castellanos v. Gonzales*, 437 F.3d 848, 852 (9th Cir. 2006) (citing *Aragon-Ayon v. INS*, 206 F.3d 847, 853 (9th Cir. 2000)) (emphasis in original); *INS v. St. Cyr*, 533 U.S. 289, 319 (2001). Thus, defendant was deportable on his 1994 kidnapping conviction at the time of his hearing in 2000. This does not, however, end the question of whether defendant was barred from seeking discretionary relief.

In *Lopez-Castellanos*, our court of appeals addressed whether an alien who was convicted of a crime that was later redefined as an "aggravated felony" could still seek discretionary relief. The alien had been convicted in 1988 of a crime which did not, at that time, qualify as an "aggravated felony." His removal proceedings were not initiated until 1999. Prior to the enactment of IIRIRA, the alien would have been eligible to apply for a form of relief known as "suspension of deportation," which required, among other things, a showing that the alien was a "person of good moral character" during the seven years preceding the date of the application. "IIRIRA eliminated suspension of deportation and replaced it with a similar (though somewhat more burdensome) kind of relief known as 'cancellation of removal,'" codified at 8 U.S.C. 1229b(b). 437 F.3d at 851. An alien convicted of an aggravated felony is statutorily barred from applying for cancellation of

removal. Lopez-Castellanos argued that he remained eligible for a discretionary waiver under the pre-IIRIRA law applicable at the time of his conviction. The court of appeals applied the two-part test set forth in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), to determine whether the statute had retroactive effect in Lopez-Castellanos' case. Under the two-part *Landgraf* test, a court must first analyze whether Congress has clearly prescribed the retroactive effect of a given statute.

> When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such result.

*Id*. at 280. Applying *Landgraf* and *St. Cyr*, the court of appeals determined that there was no "clear statement that IIRIRA's cancellation of removal statute [should] be applied retroactively." *Lopez-Castellanos*, 437 F.3d at 853. Next, the court of appeals found that, because aliens like Lopez-Castellanos were eligible for a discretionary waiver at the time of plea, "to deprive Lopez-Castellanos of eligibility for discretionary relief would produce an impermissible retroactive effect." *Ibid.* Such a result would improperly "attach[] a new disability, in respect to transactions or considerations already past." *Ibid.* (citing *Landgraf*) (quotations omitted). The court of appeals held that Lopez-Castellanos was therefore eligible to apply for cancellation of removal.

Here, however, defendant cannot claim to fall under this category of individuals for whom "retroactive" application would impose a "new disability." At the time of Lopez-Castellanos' removal proceedings, Lopez-Castellanos would have been eligible for suspension of removal relief under pre-IIRIRA law. But for the change in law, Lopez-Castellanos would have been entitled to seek discretionary relief. Unlike Lopez-Castellanos, however, defendant was convicted of two crimes, one of which occurred immediately prior to his removal proceedings. This second conviction, for possession of a controlled substance, would have rendered him ineligible to apply for suspension of removal relief under pre-IIRIRA Section 1254. Under Section 1254, a qualifying alien could apply for "voluntary departure" or "adjustment of status" relief. The alien was required to establish that he has been "a person of good moral character" for at least five years immediately preceding his application for voluntary departure, and at least seven years prior to applying for seven

years for adjustment of status.  8 U.S.C. 1254(a)(1) and (e)(1).  As previously discussed in the October order herein, the statute further defined "a person of good moral character" as excluding anyone "convicted of a violation . . . relating to a controlled substance" during the relevant period.  8 U.S.C. 1101(f)(3); 1182(a)(2)(A).  Defendant's conviction for possession of a controlled substance would have rendered him ineligible to seek relief under pre-IIRIRA Section 1254.  Therefore, he cannot claim to have entered into the second plea agreement in 1999 "with the expectation that [he] would be eligible for such relief." *St. Cyr*, 533 U.S. at 321.  Unlike the aliens in *St. Cyr* and *Lopez-Castellanos*, it was defendant's own actions that foreclosed relief, not retroactive application of intervening law.

Defendant's motion for reconsideration is therefore **DENIED**.

## CONCLUSION

For the reasons stated above, defendant's motion for reconsideration of the October 30 order denying his motion to dismiss the indictment is **DENIED**.  Nothing in this order affects the scheduling order and related dates, which remain in effect.

**IT IS SO ORDERED.**

Dated:  December 14, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE